**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Mary Emma Boyd and W.P. Boyd, Jr., as | ) | |
| Personal Representative of the Estate of | ) | |
| Emma C. Boyd, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 2:09-3325 |
| | ) | |
| Metropolitan Life Insurance Company, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on the motion of Metropolitan Life Insurance Company

("Defendant") to dismiss the Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure

12(b)(6) for failure to state a claim upon which relief can be granted. For the following reasons, the

Defendant's motion to dismiss is GRANTED.

## I. BACKGROUND

The following facts are taken from the Plaintiffs' complaint and its accompanying exhibits.[1]

Emma C. Boyd ("the decedent"), as part of her employment with Delta Airlines, Inc., participated

in a life insurance plan governed by the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 1001 et seq., ("the Plan"). Docket Entry #1 at 2. The Plaintiffs allege that

under the Plan, upon the death of the insured, benefits would be provided "to the appropriately

---

[1] "In considering motions to dismiss under Rule 12(b)(6), the court may properly consider
exhibits attached to the complaint." Smith v. McCarthy, 349 F. App'x 851, 856 (4th Cir. 2009)
(citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991));
see also Fed. R. Civ. P. 10(c).



designated beneficiary, or a default beneficiary if there was no appropriately designated beneficiary."

Id. Specifically, the Certificate of Insurance, which the Defendant has attached as an exhibit to its

motion to dismiss, provides:

> You may designate a Beneficiary in Your application or enrollment form. You may change Your Beneficiary at any time. To do so, You must send a Signed and dated, Written request to Us, using a form satisfactory to Us. Your Written request to change the Beneficiary must be sent to Us within 30 days of the date You Sign such request.
>
> You do not need the Beneficiary's consent to make a change. When We receive the change, it will take effect as of the date You Signed it. The change will not apply to any payment made in good faith by Us before the change request was recorded.
>
> If two or more Beneficiaries are designated and their shares are not specified, they will share the insurance equally.
>
> If there is no Beneficiary designated or no surviving designated Beneficiary at Your death, We will determine the Beneficiary to be Your Estate.
>
> Any payment made in good faith will discharge our liability to the extent of such payment.

Docket Entry #10-2 at 30.[2]

On December 10, 2001, the decedent filed with the Defendant a beneficiary designation form

naming her then-husband, Robert Joseph Alsager ("Alsager"), as the primary beneficiary of the life

insurance proceeds payable under the policy. Docket Entry #1 at 2; Docket Entry #1-2. The same

---

[2] "Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 396 (4th Cir. 2006). The description of coverage attached to the Plaintiffs' complaint references the Certificate of Insurance, however, and the Defendant contends that the Certificate of Insurance is part of the Plan referenced by the complaint. "[A] court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." Id. Since the Plaintiffs do not dispute the authenticity of the Certificate of Insurance, the Court believes that it can appropriately reference the Certificate of Insurance without converting the Defendant's motion to dismiss into one for summary judgment.



beneficiary designation form designated the decedent's mother, Mary Emma Boyd, as the contingent beneficiary. Id. On or about February 13, 2008, the decedent and Alsager separated, and, on April 4, 2008, the Family Court for the Ninth Judicial Circuit in Charleston County, South Carolina entered an "Order Approving Separation and Property Settlement Agreement" ("the Order"). Docket Entry #1-3. The Order incorporated a Separation and Property Settlement Agreement ("the Property Settlement Agreement"), signed by both the decedent and Alsager, in which each party to the Agreement agreed to "relinquish[] and disclaim[] all right, claim or interest . . . that she or he may acquire in the property or estate of the other, including . . . the right to receive proceeds, funds or property as a beneficiary under any life insurance policies . . . and other similar plans or assets of the other party." Id. at 12.

The decedent died on November 8, 2008. Subsequently, the Plaintiffs – Mary Emma Boyd and W.P. Boyd, Jr., as personal representative of the decedent's estate – submitted to the Defendant claims for the Plan's life insurance proceeds. The Defendant, however, determined that the proceeds were payable to Alsager, as he was the designated beneficiary on the most recent beneficiary designation form on file with the Defendant – the December 10, 2001 form. Docket Entry #1 at 3.

By letter dated October 8, 2009, the Plaintiffs appealed the Defendant's decision to deny their claim. Docket Entry #1-4. Specifically, the Plaintiffs argued that the Property Settlement Agreement constituted Alsager's waiver of his right to receive the Plan's life insurance proceeds. The Plaintiffs also claimed that the Order incorporating the Property Settlement Agreement constituted an enforceable qualified domestic relations order ("QDRO"). See 29 U.S.C. § 1056(d)(3). By letter dated December 8, 2009, the Defendant affirmed its original decision to deny the Plaintiffs' claim and award the life insurance proceeds to Alsager. Docket Entry #1-5.



On December 23, 2009, the Plaintiffs filed a complaint in this Court. The complaint raises only one claim – a cause of action for payment of life insurance benefits pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B). On February 16, 2010, the Defendant filed the instant motion to dismiss. The Plaintiffs filed a response on February 23, and the Defendant filed a reply on March 19. This matter is now ripe for determination.

## II. ANALYSIS

The Defendant has moved to dismiss the Plaintiffs' complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, "a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, 591 F.3d 250, 255 (4th Cir. 2009). The Court need not accept as true, however, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement," as well as "unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd., 591 F.3d at 255. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

"[A] complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). Factual allegations give rise to a plausible claim for relief when they "produce an inference of liability strong enough to nudge the plaintiff's claims across the line from conceivable to plausible." Nemet Chevrolet, Ltd., 591 F.3d at 256 (internal quotation marks and citations omitted). Ultimately, "[t]he complaint must . . . plead



Page 4 of  10

sufficient facts to allow a court, drawing on 'judicial experience and common sense,' to infer 'more than the mere possibility of misconduct.'" Id. (quoting Iqbal, 129 S. Ct. at 1950). The Court now turns to an analysis of the Plaintiffs' complaint.

The Plaintiffs' complaint alleges two theories of recovery: (1) that the Property Settlement Agreement waived Alsager's right to the life insurance proceeds and (2) that the Order incorporating the Property Settlement Agreement is a QDRO, which, when combined with the beneficiary designation form on file with the Defendant, operates to designate an alternate payee – Mary Emma Boyd, the contingent beneficiary. In their response to the Defendant's motion to dismiss, however, the Plaintiffs concede that the Order incorporating the Property Settlement Agreement "does not meet the technical requirements to be a QDRO," and voluntarily dismiss that claim. Docket Entry #11 at 2. Accordingly, the Court will not address the Plaintiffs' claim that they are entitled to the life insurance proceeds because the Order is an enforceable QDRO under ERISA.

Thus, the only issue before the Court is the Plaintiffs' allegation that the Defendant erred in its decision to deny the Plaintiffs' claim and award the life insurance proceeds to Alsager; the Plaintiffs assert that Alsager waived his right to those proceeds by signing the Property Settlement Agreement. The Defendant argues that this theory of recovery also fails to state a claim because, under the recent Supreme Court decision of Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan, 129 S. Ct. 865 (2009), it fulfilled its ERISA obligation by distributing the life insurance proceeds to the named beneficiary – Alsager.

Kennedy involved facts very similar to those that currently confront the Court. In that case, a participant in an ERISA governed employee pension benefit plan designated his wife as the plan beneficiary. The couple later divorced, subject to a divorce decree by which the wife was divested



of any interest in the proceeds of any retirement or pension plan arising from the husband's employment. Despite this waiver, the wife remained the designated beneficiary under the ex-husband's pension plan at the time of his death. The ex-husband's estate submitted a claim for the plan benefits, but the employer, relying on the designation form, paid the benefits to the ex-wife. The ex-husband's estate sued, "claiming that the divorce decree amounted to a waiver of the . . . benefits on [the ex-wife]'s part." Kennedy, 129 S. Ct. at 869.

The Supreme Court, in its opinion, undertook to answer two questions. First, the Court considered whether a divorced spouse could properly waive pension plan benefits through a divorce decree not amounting to a QDRO. The Court answered that question in the affirmative. The Court then proceeded to address a subsequent issue: "whether a beneficiary's federal common law waiver of plan benefits is effective where that waiver is inconsistent with plan documents." Kennedy, 129 S. Ct. at 870. The Court ultimately held that such a federal common law waiver is not effective and that "the plan administrator [performs] its statutory ERISA duty by paying the benefits . . . in conformity with the plan documents." Id. at 875. Relying on this language, the Defendant argues that it similarly fulfilled its duties under ERISA by paying the benefits to Alsager in conformity with the beneficiary designation form submitted by the decedent.

The Plaintiffs contend, however, that the current dispute is distinguishable from Kennedy in a number of ways and that, rather than Kennedy, a Fourth Circuit case, Altobelli v. IBM Corp., 77 F.3d 78 (4th Cir. 1996), dictates the outcome. First, the Plaintiffs argue that, in Kennedy, there was no express waiver signed by the designated beneficiary – the waiver occurred in the form of a court decree – whereas here "the primary beneficiary clearly and unequivocally signed off, in the presence of witnesses, expressly waiving his right to any life insurance benefits." Docket Entry #11 at 4.



Second, the Plaintiffs note that "the pension plan document in <u>Kennedy</u> specifically addressed a manner by which a named participant could waive his interest," which the beneficiary in that case did not attempt to follow. <u>Id.</u> Here, the plan provides no mechanism for a beneficiary to waive his interest. Finally, the Plaintiffs suggest that this case is different because "the plan in <u>Kennedy</u> was a heavily regulated ERISA pension plan while the plan before the court . . . is merely an ERISA welfare plan insured by Defendant Metropolitan Life." <u>Id.</u> The Plaintiffs argue that the same factual distinctions that exist between <u>Kennedy</u> and this case also exist between <u>Kennedy</u> and the Fourth Circuit's decision in <u>Altobelli</u>, and that <u>Altobelli</u> is the precedent that controls disposition of this case. Since the Fourth Circuit in that case gave effect to a designated beneficiary's waiver of plan benefits contained in a domestic relations order, the Plaintiffs contend that this Court must deny the Defendant's motion to dismiss and allow their suit against the Defendant to proceed. <u>See Altobelli</u>, 77 F.3d at 80-82.

  Only one of the Plaintiffs' arguments merits extended discussion: the Plaintiffs' claim that <u>Kennedy</u> is not applicable here because the pension plan in <u>Kennedy</u> specifically provided a method for a beneficiary to waive his interest, which the waiving party in that case did not follow, while the plan in the current case is silent on whether or not a beneficiary can waive his interest.[3] The Plaintiffs support this argument by pointing out that, in footnote 13 of its <u>Kennedy</u> opinion, the

---

[3] The first distinction that the Plaintiffs assert – that in <u>Kennedy</u> there was no express waiver signed by the designated beneficiary – is irrelevant to this case. Whether the waiver was signed or not is an issue affecting whether the waiver is a valid federal common law waiver. In <u>Kennedy</u>, the Supreme Court assumed the waiver was a valid federal common law waiver, and the Court does the same in this case. With respect to the third distinction offered by the Plaintiffs – that "the plan in <u>Kennedy</u> was a heavily regulated ERISA pension plan while the plan before the court . . . is merely an ERISA welfare plan insured by Defendant Metropolitan Life" – the Plaintiffs make no further reference to this distinction or how it might affect the Court's analysis. In the absence of any further explanation, the Court discounts this distinction as well.



Supreme Court expressly noted that its decision did not address "a situation in which the plan documents provide no means for a beneficiary to renounce an interest in benefits." Kennedy, 129 S. Ct. at 877 n.13. According to the Plaintiffs, the key to the Supreme Court's holding in Kennedy was the beneficiary's failure to follow the plan's prescribed method for waiving benefits; the Court therefore left open the question of whether or not a beneficiary's waiver would control over the participant's designation form in a case where there is no prescribed method for a beneficiary to waive his interest and thus no conflict. Since Kennedy does not control such a situation, the Plaintiffs reason that Altobelli does.

This Court agrees with the Plaintiffs that this question remains open after Kennedy. The Court does not believe, however, that this fact necessarily leads to the conclusion that Altobelli controls the disposition of this case. Indeed, after reviewing the Kennedy opinion, this Court must reject the Plaintiffs' assertion that the Fourth Circuit's holding in Altobelli remains good law despite the Supreme Court's opinion in Kennedy. The Kennedy opinion clearly treated Altobelli as a decision that stood for the rule that a federal common law waiver prevails over inconsistent plan documents – the rule that the Kennedy Court ultimately rejected. Kennedy, 129 S. Ct. at 870 n.5. Moreover, there was a dissenting opinion in Altobelli, and the Supreme Court twice cited to that dissent to support its own decision in Kennedy. Id. at 876. Thus, the Court agrees with the Defendant that the Kennedy decision, by deciding that plan documents, and not a federal common law waiver, control the disposition of benefits, overruled circuit court decisions holding otherwise, including Altobelli. Under such circumstances, Altobelli is no longer binding law in the Fourth Circuit, see Smith v. Moore, 137 F.3d 808, 821 (4th Cir. 1998) (noting that Fourth Circuit precedent is binding until overruled by the United States Supreme Court or an en banc opinion of the Fourth



Page 8 of 10

Circuit).

Moreover, the Fourth Circuit has not yet had the opportunity to determine whether Kennedy extends to situations, like this one, in which the plan documents provide no means for the beneficiary to renounce his interest. Thus, the Court is of the opinion that this case presents an issue of first impression and, after considering the briefs and caselaw submitted by the parties, concludes that the holding and rationale in Kennedy should extend to cover this situation.

The Supreme Court, in Kennedy, relied heavily on ERISA's statutory directives in reaching its decision. As the Supreme Court noted:

> ERISA requires "[e]very employee benefit plan [to] be established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1), "specify[ing] the basis on which payments are made to and from the plan," § 1102(b)(4). The plan administrator is obliged to act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [Title I] and [Title IV] of [ERISA]," § 1104(a)(1)(D), and the Act provides no exemption from this duty when it comes time to pay benefits. On the contrary, § 1132(a)(1)(B) . . . reinforces the directive, with its provision that a participant or beneficiary may bring a cause of action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

Kennedy, 129 S. Ct. at 875. Thus, a claim "stands or falls by 'the terms of the plan,' § 1132(a)(1)(B)." Id. This is a simple rule, and the Supreme Court argued that the alternative, requiring a plan administrator to consider external documents when processing claims and disbursing benefits, would impose an unacceptable burden on the administrator:

> And the cost of less certain rules would be too plain. Plan administrators would be forced "to examine a multitude of external documents that might purport to affect the dispensation of benefits," Altobelli v. IBM Corp., 77 F.3d 78, 82-83 (CA4 1996) (Wilkinson, C. J., dissenting), and be drawn into litigation like this over the meaning and enforceability of purported waivers. The Estate's suggestion that a plan administrator could resolve these sorts of disputes through interpleader actions merely restates the problem with the Estate's position: it would destroy a plan



Page 9 of 10

administrator's ability to look at the plan documents and records conforming to them to get clear distribution instructions, without going into court.

Id. at 876.

Here, the Certificate of Insurance, which the Plaintiffs do not dispute was part of the Plan, provided the decedent with a mechanism for designating a beneficiary or beneficiaries. The decedent named Alsager as the beneficiary. The Plan also provided the decedent with the opportunity to change the named beneficiary; she did not do so. Thus, under "the terms of the plan" the Plan beneficiary was Robert Alsager. That the Plan did not provide a mechanism for Alsager to waive his rights does not change this fact. Accordingly, the Court finds that the Plaintiffs have failed to state a claim against the Defendant because the Defendant, by distributing the proceeds of the decedent's plan to the beneficiary named in the beneficiary designation form submitted by the decedent, fulfilled its obligations under ERISA. See Dunlap v. Ormet Corp., No. 5:08CV65, 2009 U.S. Dist. LEXIS 22346 at *20 (N.D. W. Va. March 19, 2009) ("[U]nder Kennedy, if the plan sets forth procedures that comply with ERISA's requirements, and if the plan administrator follows those procedures, no duty may be imposed upon the plan administrator to examine external documents which could create ambiguities concerning the dispensation of benefits.").

The Defendant's motion to dismiss (Docket Entry #10) is GRANTED.

**AND IT IS SO ORDERED.**

C. WESTON HOUCK
UNITED STATES DISTRICT JUDGE

June 15, 2010
Charleston, South Carolina

